Allen Goudy, Plaintiff-Appellant,

v.

Yamaha Motor Corporation, USA and
Winnebagoland Kawasaki a/k/a Team
Winnebagoland, Defendants-Respondents.

Court of Appeals

*No. 2009AP617. Submitted on briefs November 13, 2009.
—Decided March 24, 2010.*

2010 WI App 55

(Also reported in 782 N.W.2d 114.)

441

443

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jerome T. Feldner* of *Consumer Legal Services*, Elm Grove.

On behalf of the defendant-respondent, Yamaha Motor Corporation, U.S.A., the cause was submitted on the brief of *Erik J. Pless* and *Ryan M. Froelich* of *Everson, Whitney, Everson & Brehm, S.C.*, Green Bay.

On behalf of the defendant-respondent, Winnebago-land Kawasaki a/k/a Team Winnebagoland, the cause was submitted on the brief of *Jeffrey S. Fertl* and *Melissa J. Lauritch* of *Hinshaw & Culbertson LLP*, Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Snyder, J.

¶ 1. NEUBAUER, P.J.    Allen Goudy appeals from a summary judgment order granted in favor of Yamaha Motor Corporation, USA, and Winnebagoland Kawasaki a/k/a Team Winnebagoland. Goudy purchased a new 2004 Yamaha motorcycle and a Yamaha extended service plan from Winnebagoland. Shortly after purchase, Goudy experienced ongoing problems with the motor-cycle. Yamaha denied Goudy's claims under WIS. STAT. § 218.0171 (2007–08),[1] the Wisconsin New Motor Ve-hicle Warranties Act (also referred to as the "Lemon Law"), because the vehicle had been modified by Win-nebagoland prior to purchase so as to include over forty-two accessory parts which were not covered by Yamaha's warranty or extended service plan. Goudy

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

subsequently filed this action against Yamaha and Winnebagoland claiming: (1) breach of express and implied warranties in common law and under the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301–2312 (West 2010); (2) revocation of acceptance; (3) breach of contract; (4) violations of § 218.0171; and (5) violations of WIS. STAT. § 100.18(1), Wisconsin's Deceptive Trade Practices Act. The trial court determined that Yamaha and Winnebagoland were entitled to summary judgment as a matter of law and dismissed Goudy's action in its entirety and with prejudice. We affirm the trial court's ruling in all respects except one. We conclude that Goudy is entitled to pursue his claim against Winnebagoland under § 100.18. We remand for further proceedings.

## BACKGROUND

¶ 2. On May 27, 2004, Goudy's daughter, Elizabeth Goudy, entered into a purchase contract with Winnebagoland for two Yamaha motorcycles.[2] The purchase contract for the new 2004 Yamaha XVS11S indicates that the motorcycle is covered by the new motor vehicle warranty. Goudy was present during the sale of the vehicles and provided a signed check in the amount of $36,317.99 for their purchase.[3] The motorcycle at issue had been modified by Winnebagoland to include approximately forty-two nonstock, i.e., non-Yamaha, accessory parts and twelve Yamaha issued parts. These accessory parts are detailed on a three-page Accessory List; however, the Accessory List produced by Winnebagoland was not signed and the pur-

---

[2] The motorcycle model is referred to alternately in the record as a Yamaha XVS11SB, XVS11S or XVS11.

[3] The parties do not dispute Goudy's pursuit of claims under the contract.

445

chase contract does not reference it. The motorcycle was purchased with a Yamaha Extended Service Plan. Shortly after purchase, Goudy began to experience problems with the motorcycle, including the rear suspension being too low to ride, oil leaks, and loose mirrors. Goudy's problems with the motorcycle persisted over the next year and included issues relating to the clutch, throttle control, rear suspension, and carburetor.

¶ 3.   On June 29, 2005, Goudy completed a Motor Vehicle Lemon Law Notice, which he provided to Yamaha Motor Corporation. The notice detailed the dates and types of repairs, Goudy's collateral costs sustained in connection with the repairs, and demanded a refund for the motorcycle. Yamaha responded on July 7, 2005, notifying Goudy that he "purchased a highly modified unit" and explaining:

> [T]he Yamaha Limited Warranty as well as the Yamaha Extended Service Plan cover repairs necessitated due to a manufacturing related defects [sic] only. Repairs necessitated due to the failure of an aftermarket part or failure of Yamaha parts due to the modification of a unit would not be covered. Due to this information we are not in a position to offer a buyback of this unit.

¶ 4.   On April 28, 2006, Goudy, by his attorneys, wrote to Yamaha Motor Corporation to inform them that the motorcycle he purchased in May 2004 had been in for repairs "on at least four (4) different occasions," and he was revoking his acceptance of the motorcycle. Goudy then commenced this action against Yamaha on May 3, 2006.

¶ 5.   On December 21, 2007, Goudy sent a demand for relief to Winnebagoland under the Lemon Law. Goudy again alleged that this vehicle had been out of

service for at least thirty days because of one or more defects during its first year of warranty. Based on the repair information submitted with Goudy's Lemon Law demand, Winnebagoland denied that the vehicle had been out of service for more than thirty days due to any mechanical defect or that it had been serviced more than four times for the same defect. Goudy amended his complaint on January 31, 2007, to include Winnebagoland, and then again on February 27, 2008, to include a claim under WIS. STAT. § 100.18.

¶ 6. Yamaha moved for summary judgment on October 1, 2008, arguing that the failures experienced by Goudy were either the result of nonstock, i.e., not Yamaha, components installed on the motorcycle, none of which are covered under Yamaha's warranties, or the result of normal wear and tear, also not covered under warranty. Two weeks later, Winnebagoland moved for summary judgment. Winnebagoland argued that it was not a "manufacturer" as defined under the Lemon Law, it issued no warranties for the motorcycle, and it made no misrepresentations in selling the motorcycle. Goudy opposed the motions on grounds that both Winnebagoland, having "assembled" the motorcycle, and Yamaha are subject to the Lemon Law and that Winnebagoland violated WIS. STAT. § 100.18 when it failed to disclose that Yamaha's warranty "would not cover the extensive modifications it had made to the 2004 Motorcycle." Goudy argued that Winnebagoland had a duty to disclose under WIS. ADMIN. CODE § Trans 139.04(2)(a).

¶ 7. Following a hearing on January 28, 2009, the trial court granted both Yamaha's and Winnebagoland's motion for summary judgment. In its order granting summary judgment, the court found that, while Yamaha warranted the motorcycle and issued an extended warranty, the warranty covered only original

447

equipment and stock parts. The court further found that (1) the parts that failed were nonstock, i.e., not Yamaha, parts that were added to the motorcycle by Winnebagoland and, therefore, the parts that failed are not covered under Yamaha's warranty; (2) Winnebagoland is not a manufacturer and issued no warranties; (3) Winnebagoland failed to disclose that accessories were added to the motorcycle,[4] however, this is not a basis for civil liability; and (4) the failure to disclose is not an assertion, representation or statement of fact with intent to induce the sale under WIS. STAT. § 100.18 and, therefore, Winnebagoland did not engage in deceptive trade practices.

¶ 8.  Goudy appeals.

## DISCUSSION

■■
¶ 9.  Our standard of review for summary judgment questions is de novo. *See Green Springs Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We follow the same methodology as the trial court in deciding whether summary judgment is appropriate. *Id.* at 317. The first step of that methodology is to examine the pleadings to determine whether a claim for relief has been stated. *Id.* at 315. If so, the next step requires the court to examine whether any factual issues exist. *Id.* Under WIS. STAT. § 802.08(2), summary judgment must be entered "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4] The summary judgment record reveals that this factual issue was disputed by the parties.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 10.   Goudy argues that he is entitled to recovery under Wisconsin's Lemon Law, which was enacted to protect purchasers of new vehicles that turn out to be defective (colloquially known as "lemons"). *See Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶ 9, 273 Wis. 2d 612, 682 N.W.2d 365. Whether Yamaha or Winnebagoland are liable under the Lemon Law presents a question of law. *See id.*, ¶ 7. Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo. *Marotz v. Hallman*, 2007 WI 89, ¶ 15, 302 Wis. 2d 428, 734 N.W.2d 411.

¶ 11.   At the outset, we reject Goudy's contention that Yamaha and Winnebagoland failed to meet the burden of proof on summary judgment as to breach of implied warranty, under Wis. Stat. § 402.314 and the Magnuson-Moss Warranty Act, and revocation of acceptance. While Yamaha did not argue these issues directly, it did challenge Goudy's claims as to the failure of any of its manufactured parts and the application of its warranty to any of the defects cited. Both of these arguments travel to the breach of implied warranty and revocation claims. Similarly, Winnebagoland's complete denial of any warranty, implied or express, would encompass the issue of revocation.[5] We therefore turn to the issues presented on summary judgment.

[5] Beyond his contention that the defendants failed to meet their burden, Goudy fails to address the dismissal of these claims on the merits. As discussed herein, judgment was properly granted on Goudy's breach of implied warranty claims, and Goudy provides no legal basis for the survival of a revocation claim, given the absence of any evidence that a warranted

## 1. Goudy's Claims Against Yamaha

### a. Breach of Warranty/Lemon Law

■

¶ 12. As to Yamaha, Goudy contends that (1) certain of the alleged parts that failed, including the clutch, were manufactured by Yamaha, and that Yamaha refused to continue to service the clutch under warranty and (2) Yamaha should be liable under the Lemon Law for nonstock parts installed by Winnebago-land under *Schonscheck v. Paccar, Inc.*, 2003 WI App 79, 261 Wis. 2d 769, 661 N.W.2d 476. Yamaha contends, and we agree, that Goudy has failed to raise a genuine issue of material fact as to any Yamaha part failure and, further, that any alleged failure fulfilled the requirements of the Lemon Law.

¶ 13. Wisconsin's Lemon Law provides a remedy to the purchaser of a new vehicle if the purchaser, within one year of the purchase date, experiences problems with the vehicle that (1) are covered by the vehicle's warranty and (2a) are severe enough to keep the vehicle out of service for a total of thirty days or (2b) the manufacturer or the manufacturer's authorized representative are unsuccessful in repairing after four attempts.[6] *Garcia*, 273 Wis. 2d 612, ¶ 9 (citing Wis. Stat. § 218.0171(1)(h) and 218.0171(2)(a)).

---

product is nonconforming. *See Malone v. Nissan Motor Corp. in U.S.A.*, 190 Wis. 2d 436, 445, 526 N.W. 2d 841 (Ct. App. 1994) (claim under Wis. Stat. § 402.608 properly dismissed where there is no evidence that a warranted product is nonconforming); Wis. Stat. § 402.106(2) (goods are nonconforming when they are not in accordance with the obligations under the contract).

[6] Wisconsin. Stat. § 218.0171(2)(a) provides:

¶ 14. Yamaha contends that Goudy's claims fail because there is no evidence that the nonstock parts that failed were covered by express warranty. Yamaha's New Vehicle Manufacturer Warranty excludes failures caused by the "[i]nstallation of parts or accessories that are not qualitatively equivalent to genuine Yamaha parts." The only specific failure of a Yamaha part cited by Goudy is an issue with the clutch. Goudy's December 27, 2007 Lemon Law attachment detailing repairs indicates that the motorcycle was in for repairs from April 13, 2005, until April 30, 2005, with the reported problems being: "Check clutch for slipping; install right mirror; carb sync needs jet kit." However, the April 30, 2005 repair invoice reflects that the clutch issue was resolved by replacing the clutch and that the replacement part was covered under warranty. Neither Goudy's Lemon Law notice to Yamaha dated June 29, 2005, nor his December 27, 2007 notice to Winnebagoland, identified any continuing problems with the clutch. Rather, the attachment to the June notice identifying vehicle repair information stated that the clutch had been replaced.[7] There is no evidence of a

(2) (a) If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer must accept return of the vehicle and replace it with a comparable vehicle or refund the full purchase price. Sec. 218.0171(2)(b)2.a. & b.

[7] While the June 29 notice lists the date for the replacement of the clutch as "5/05," our review of the record indicates this is

451

continuing problem or of any further work done on the clutch. Thus, the repair of the clutch did not keep the vehicle out of service for over thirty days as required under the Lemon Law, nor was it the subject of four separate repair attempts. *See* WIS. STAT. § 218.0171(1)(h)1. & 2. (the same nonconformity is the subject of four repair attempts or the motor vehicle is out of service for an aggregate of at least thirty days because of warranty nonconformities). Moreover, the evidence submitted indicates that the clutch was replaced under Yamaha's warranty[8] and Goudy does not develop any basis for an alleged breach of warranty by Yamaha as to any other Yamaha part, much less any basis for a Lemon Law violation.[9]

---

the same work referenced in the "04/30/05" invoice, as both the invoice and attachment refer to clutch replacement, mirror work, and work on the carburetor.

[8] On appeal Goudy cites to an allegation in the complaint that he continued to have problems with the Yamaha stock clutch. WISCONSIN STAT. § 802.08(3) makes clear that "an adverse party may not rest upon the mere allegations or denials of the pleadings." Goudy's reply brief alleges a continuing issue with the "clutch lever"; however, both Yamaha and Winnebagoland listed the clutch lever as a nonstock accessory installed by Winnebagoland, and Goudy did not submit any evidence to refute this.

[9] Goudy now contends that Yamaha failed to meet its prima facie burden to establish that the parts Winnebagoland installed were not "qualitatively equivalent to genuine Yamaha parts." However, Yamaha set forth the facts to show on summary judgment that the failed parts were nonstock and not covered by its warranty. In response, Goudy did not develop any argument or point to any evidence to establish that any one of the nonstock parts was, in fact, qualitatively equivalent. *See Kenefick v. Hitchcock*, 187 Wis. 2d 218, 227–228, 522 N.W.2d 261 (Ct. App. 1994) (while a party seeking summary judgment must establish a record sufficient to demonstrate that there are no triable issues of fact, the ultimate burden of demonstrating that there is

### b. Lemon Law—Manufacturer Liability

¶ 15. Next, Goudy contends that Yamaha should be liable for nonstock parts installed by Winnebagoland. In support, Goudy relies on this court's decision in *Schonscheck*, which addressed a manufacturer's liability for component parts which are not covered by the manufacturer's express warranties. *Schonscheck*, 261 Wis. 2d 769, ¶¶ 13, 16. In *Schonscheck*, the noncomformity in the vehicle at issue resulted from the engine, which was made by a supplier but incorporated into the vehicle by the manufacturer. It was undisputed that the manufacturer had excluded the engine from its express warranty. *Id.*, ¶ 13. Looking to the language of the statute and the underlying policies, the court concluded that "[a] manufacturer cannot simply exclude all major parts from its warranty to avoid [L]emon [L]aw liabil-

sufficient evidence to go to trial at all is on the party that has the burden of proof on the issue that is the object of the motion). Moreover, in his summary judgment brief, Goudy acknowledged that "most of the alleged nonconformities did relate to parts and/or accessories that were installed by Winnebagoland and were excluded by Yamaha's written warranties." Goudy also noted that the changes were made by Winnebagoland without the knowledge or consent of Yamaha. In his reply brief, Goudy now identifies certain problem parts, such as the forward controls and shift lever, and yet he acknowledges that these too are nonstock. As to the carburetor complaint, Goudy also failed to respond to Yamaha's summary judgment submissions that the warranty excluded coverage for wear or tear or normal maintenance. Because these issues are first raised in Goudy's reply brief, we will not address them other than to point out that they lack merit. *Northwest Wholesale Lumber, Inc. v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995) (it is a well-established rule of appellate practice that the court will not consider arguments raised for the first time in a reply brief).

ity." *Id.*, ¶¶ 16–17. While the failure of nonstock parts in this case impacted the overall performance of the vehicle, none of the parts were installed by Yamaha during the actual manufacturing of the vehicle.

¶ 16. We agree with Yamaha that the nonstock dealer-added accessory parts at issue in this case are more akin to the "spoiler" at issue in *Malone v. Nissan Motor Corporation*, 190 Wis. 2d 436, 526 N.W.2d 841 (Ct. App. 1994). In *Malone*, the purchaser ordered a Nissan Sentra with a spoiler from an auto dealer. *Id.* at 439. At the time he purchased the vehicle, it was his understanding that the spoiler was a Nissan product covered by warranty. *Id.* at 440. After delivery, the purchaser began to experience problems with the spoiler, took the car in for repairs at two Nissan-authorized auto dealers and was never charged for the repairs. *Id.* As here, Nissan later denied the purchaser's Lemon Law demand on grounds that the spoiler was not "manufactured, sold, distributed or supplied by Nissan." *Id.* The court of appeals ruled in favor of Nissan, explaining:

> Wisconsin's Lemon Law "was not enacted to make automobile manufacturers 'super warrantors' of all automobile parts and products, particularly those which the automobile manufacturer does not manufacture, sell or supply." [The purchaser's] argument would make the manufacturer liable for all defects even if the manufacturer did not design, engineer, manufacture, distribute, sell or advertise the accessory or consider and write the warranty. This theory would relieve third-party accessory manufacturers from liability—they could manufacture and distribute poor quality products knowing that the car manufacturer would be liable if the accessory was defective.

*Id.* at 442. Because there is no evidence that the nonstock accessory parts installed by Winnebagoland

were manufactured, distributed, sold or warranted by Yamaha, Yamaha cannot be held liable for their failure under the Lemon Law.

### 2. *Goudy's Claims Against Winnebagoland*

#### a. *Lemon Law—Manufacturer Liability*

¶ 17.   Turning to Winnebagoland, Goudy contends that Winnebagoland is a "manufacturer" under WIS. STAT. § 218.0171(1)(c) and is therefore liable for the failure of the component parts it installed. Goudy's argument is premised on his assertion that Winnebagoland essentially assembled the motorcycle when it installed approximately forty-two accessories. Winnebagoland argues that because it is a motor vehicle dealer, it cannot be considered a manufacturer under the Lemon Law.

¶ 18.   Pursuant to WIS. STAT. § 218.0101(20), the general definition of manufacturer is

> any person, resident or nonresident, who does any of the following:
>
> (a) Manufactures or assembles motor vehicles.
>
> (b) Manufactures or installs on previously assembled truck chassis, special bodies or equipment which when installed form an integral part of the motor vehicle and which constitutes a major manufacturing alteration and which completed unit is owned by the manufacturer.

Under the Lemon Law, WIS. STAT. § 218.0171(1)(c), " 'Manufacturer' means a manufacturer as defined in [§] 218.0101 (20) and agents of the manufacturer, including an importer, a distributor, factory branch, distribu-

tor branch and any warrantors of the manufacturer's motor vehicles, *but not including a motor vehicle dealer.*" (Emphasis added.)

¶ 19.  Based on the definition of manufacturer under the Lemon Law, Winnebagoland is exempt from liability because it is a "motor vehicle dealer." *See* WIS. STAT. § 218.0171(1)(c). While Goudy argues that Winnebagoland, as an "assembler," falls under the general definition of "manufacturer," WIS. STAT. § 218.0101(20), the Lemon Law provision specifically excludes a "motor vehicle dealer" from the definition of "manufacturer" under § 218.0171(1)(c). We therefore uphold the trial court's grant of summary judgment in favor of Winnebagoland on this claim.

   *b.  Breach of Implied Warranties Claim: The Magnuson-Moss Warranty Act and the Effect of the Service Contract*

¶ 20.  The purchase contract includes a section entitled Dealer Warranty Information which provides: "AS IS—NO WARRANTY. DEALER DISCLAIMS ALL WARRANTIES INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." Goudy contends that Winnebagoland breached the implied warranty of merchantability under the Magnuson-Moss Warranty Act because the act prohibits sellers from disclaiming implied warranties if they "enter[] into" a service contract with the buyer. Goudy contends that Winnebagoland was the supplier of the Yamaha extended warranty YES Plan—Winnebagoland raised the idea of the YES Plan, Winnebagoland sold the YES Plan to Goudy, and Winnebagoland profited from the sale of the YES Plan to

456

Goudy. Goudy argues that, as the supplier of the service contract, Winnebagoland cannot now disclaim implied warranties.

¶ 21.   Under 15 U.S.C. § 2308(a) (West 2010) of the federal Magnuson-Moss Warranty Act, "No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if . . . at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." A "supplier" is "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4). Section 2301(8) defines the term "service contract" as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."

■

¶ 22.   We agree with Winnebagoland that, despite its sale of the YES Plan to Goudy, the facts set forth here do not establish that Winnebagoland entered into a service contract with Goudy. The service contract purchased by Goudy was between Yamaha (the provider of services) and Goudy (the receiver). The contract is administered by Yamaha, and it permitted Goudy to take the motorcycle to any franchised Yamaha dealer authorized to make repairs. Indeed, Goudy did take his motorcycle to another dealer for repairs. The prefacing language to the Yamaha YES Plan provides:

**PLEASE READ THIS CONTRACT CAREFULLY. IT CONTAINS THE ENTIRE AGREEMENT *BETWEEN YAMAHA MOTOR CORPORATION,***

457

*U.S.A. AND YOU.* **THIS CONTRACT TAKES THE PLACE OF ANY OTHER WRITTEN OR ORAL STATEMENTS MADE TO YOU ABOUT YOUR COVERAGE UNDER THIS CONTRACT. THIS CONTRACT IS NOT AN INSURANCE POLICY. YAMAHA [] DOES NOT AUTHORIZE ANYONE TO CREATE FOR IT ANY OBLIGATION THAT IS NOT CONTAINED IN THIS CONTRACT.** (Emphasis added.)

Thus, not only is the service contract expressly between Yamaha and Goudy only, it also disavows any notion that Winnebagoland could alter the terms of the contract in any way. It bound Yamaha to repair the motorcycle, not Winnebagoland. *See Tague v. Autobarn Motors, Ltd.*, 914 N.E.2d 710, 721–22 (Ill. App. Ct. 2009) (offering third-party service contract and accepting payment insufficient to prevent disclaimer by dealer where third-party supplier was obligated to repair the vehicle and consumer had an option regarding where to take vehicle for repair); *Mitsch v. General Motors Corp.*, 833 N.E. 2d 936, 941 (Ill. App. Ct. 2005) (merely offering third-party service contract and accepting payment for it insufficient to prevent disclaimer by dealer); *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587–88 (7th Cir. 2001) (no prohibition against disclaimer of implied warranty when consumer purchased third-party contract from dealer).[10] As the trial court correctly concluded, the facts are undisputed that Winnebagoland did not "enter into a service contract" with Goudy. We therefore reject Goudy's claim against Winnebagoland based on breach of implied warranty.

---

[10] While Goudy also points to the dealer's retention of a portion of the price, he does not develop this argument or provide any additional facts to establish that Winnebagoland entered into a service contract obligating it to perform maintenance or repair services for Goudy.

### 3. Violation of Deceptive Trade Practices Act, WIS. STAT. § 100.18

¶ 23. WISCONSIN STAT. § 100.18, the deceptive trade practices act, prohibits sellers from making deceptive, false or misleading representations or statements of fact to prospective buyers.[11] There are three elements to a claim under § 100.18: (1) the defendant made a representation to the public with the intent to induce an obligation; (2) the representation was "untrue, deceptive or misleading"; and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff. *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,

---

[11] WISCONSIN STAT. § 100.18, governing fraudulent representations, provides:

(1) No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

459

2007 WI 70, ¶ 19, 301 Wis. 2d 109, 732 N.W.2d 792. Goudy contends that Winnebagoland violated § 100.18 when selling the highly-modified 2004 Yamaha motorcycle. Specifically, Goudy cites Winnebagoland's failure to disclose the modifications made with the accessories and the fact that these modifications might preclude application of Yamaha's warranty. Goudy argues that Winnebagoland had a duty to disclose the modifications under WIS. ADMIN. CODE § Trans 139.04(2)(a) and failed to do so. We reject Goudy's contention because § 100.18 does not encompass a duty to disclose. However, Goudy also points to Winnebagoland's affirmative representation that the vehicle was covered by the manufacturer's warranty. On this basis, we agree that material issues of fact exist as to whether Winnebagoland violated § 100.18.

### a. Failure to Disclose

¶ 24. Goudy contends that Winnebagoland violated WIS. STAT. § 100.18 when it breached its duty under WIS. ADMIN. CODE § Trans 139.04(2)(a)[12] to disclose the modifications and lack of warranty coverage prior to purchase. However, Winnebagoland correctly

---

[12] WISCONSIN ADMIN. CODE § Trans 139.04(2)(a) entitled NEW MOTOR VEHICLE DISCLOSURE provides:

> The dealer and salesperson licensees shall disclose to the prospective purchaser of any new motor vehicle when any parts, equipment or accessories originally installed have been removed or replaced by a dealer licensee prior to sale, if the replacement items are not of equal quality, and shall disclose all dealer installed options or accessories and whether or not warranted. The disclosures shall be in writing on the face of the motor vehicle purchase contract as required by s. Trans 139.05 (2) (f) and (h).

The purpose of the motor vehicle trade practices provisions is to "establish the department's administrative interpretation of"

asserts that "[a] nondisclosure is not an 'assertion, representation or statement of fact' under WIS. STAT. § 100.18(1)" and "[s]ilence—an omission to speak—is insufficient to support a claim under WIS. STAT. § 100.18(1)." *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 40, 270 Wis. 2d 146, 677 N.W.2d 233.

¶ 25.   Goudy acknowledges that silence or a failure to disclose is not in violation of WIS. STAT. § 100.18; however, he relies on *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 26, 288 N.W.2d 95 (1980), for the proposition that if there is a duty to disclose a fact, then the failure to disclose is treated as equivalent to a representation. Goudy's reliance is misplaced. *Ollerman* addressed a common-law tort claim for intentional misrepresentation, *see id.* at 25–26, and the standards for common law misrepresentation do not apply to claims under § 100.18 because the legislature created a distinct cause of action, *see K&S Tool & Die Corp.*, 301 Wis. 2d 109, ¶ 36. The supreme court's decision in *Tietsworth* additionally confirms that no such exception exists for § 100.18. *See Tietsworth*, 270 Wis. 2d 146, ¶¶ 4, 39–40; *see also* WIS JI—CIVIL 2418 cmt. ("[s]ilence is insufficient to support a claim" under § 100.18). We therefore turn to Goudy's claim that Winnebagoland made affirmative representations as to the warranty coverage prior to purchase.

### b. Affirmative Representations

¶ 26.   Goudy contends that the representation made by Winnebagoland on the Purchase Contract that

statutory provisions relating to licensing and other statutes not applicable here. *See* WIS. ADMIN. CODE § Trans 139.01(1).

461

he was purchasing a 2004 Yamaha XVS11S covered by a New Vehicle Manufacturer Warranty was false and Winnebagoland knew at the time of the sale that Yamaha's warranty would not cover the extensive modifications it had made to the motorcycle.[13] Goudy additionally contends that because Winnebagoland added and/or replaced parts totaling more than one-half of the purchase price of the vehicle, the motorcycle could not truthfully be sold as a 2004 Yamaha XVS11S. Based on our review of the record, we conclude that a material issue of fact exists as to the veracity of the affirmative representations made regarding the vehicle purchased and the applicable warranty coverage.

¶ 27.  The Purchase Contract submitted by Goudy indicates that the vehicle purchased, a new 2004 Yamaha XVS11S, is covered by a New Vehicle Manufacturer Warranty. However, correspondence from Yamaha denying Goudy's Lemon Law claim indicates that Goudy purchased a "highly modified unit" and includes an inspection report listing the "non-stock" parts added after factory delivery and the factory parts missing as a result of alteration. The list is extensive and reflects the replacement of numerous items including, but not limited to, the wheels; the windshield; the front and rear brake rotors; the front and rear brake lines; the throttle, clutch and choke cables; the right and left foot pegs, brake pedal, and shift lever and linkage; and the

---

[13] Winnebagoland correctly contends that Goudy failed to raise this particular argument before the trial court on summary judgment. Although we will not generally review an issue raised for the first time on appeal, *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980), we will permit a new argument to be raised on an issue which was raised below, *State v. Holland Plastics Co.*, 111 Wis. 2d 497, 504–05, 331 N.W.2d 320 (1983).

exhaust system.[14] Goudy contends that the representation that he purchased a new 2004 Yamaha XVS11S that would be covered by a New Vehicle Manufacturer Warranty was not true, because he in fact purchased a highly modified unit that Yamaha effectively disclaimed as its own. These documents raise a genuine issue of material fact as to whether Winnebagoland's affirmative representations on the purchase contract were "untrue" or "misleading" under WIS. STAT. § 100.18.

¶ 28.   Therefore, while Winnebagoland contends that the Purchase Contract is correct in that Goudy did purchase a 2004 Yamaha XVS11S which was covered by a New Vehicle Manufacturer Warranty, a material issue of fact remains as to whether the modifications made by Winnebagoland so altered the motorcycle as to render these underlying "truths" meaningless for purposes of warranty coverage. We therefore reverse the trial court's dismissal of Goudy's WIS. STAT. § 100.18 claim on this ground.

## CONCLUSION

¶ 29.   We conclude that the trial court properly dismissed Goudy's claims against Yamaha. With respect to Winnebagoland, we conclude that the trial court properly dismissed Goudy's Lemon Law claim against Winnebagoland as a motor vehicle dealer; however, we further conclude that a genuine issue of material fact exists as to whether Winnebagoland's affirmative representations in its purchase contract violated WIS. STAT.

---

[14] As Goudy points out, the facts on summary judgment indicate that Winnebagoland spent 22.5 hours adding $6,654.53 in parts and accessories to the motorcycle he ultimately purchased. The cost of labor, $2,612.50, and parts amounted to over one-half of the purchase price of the vehicle.

§ 100.18. We therefore reverse the trial court's dismissal order as to this issue and remand for further proceedings.

*By the Court.*—Affirmed in part; reversed in part and cause remanded with directions.