Kevin I. MASON, Appellant,

v.

**SCHWEIZER AIRCRAFT CORP., Appellee.**

No. 00-1231.

Supreme Court of Iowa.

Nov. 14, 2002.

Paul P. Morf of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellant.

Diane Kutzko and Kurt Kratovil of Shuttleworth & Ingersoll, Cedar Rapids, and Peter T. Kirchen of Kern and Wooley, L.L.P., Los Angeles, California, for appellee.

Richard G. Santi of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines and Frederick C. Schafrick of Shea & Gardner, Washington, D.C., for amicus curiae General Aviation Manufacturers Association.

TERNUS, Justice.

The appellant, Kevin Mason, was injured when the helicopter he was piloting crashed. Mason then brought suit against the appellee, Schweizer Aircraft Corporation, which had provided maintenance support materials to Mason's employer, the owner of the aircraft. The district court granted Schweizer's motion for summary judgment, ruling that Mason's suit was barred under the statute of repose found in the General Aviation Revitalization Act of 1994 (GARA), 49 U.S.C. § 40101 note (1994). Mason appealed. Finding no error, we affirm.

## I. Background Facts and Proceedings.

On August 19, 1996, Kevin Mason, a Cedar Rapids police officer, was seriously injured when the helicopter he was piloting experienced complete engine failure and crashed. An investigation by the National Transportation Safety Board determined that the probable cause of the crash was two plastic pieces that had broken off the air filter housing and entered the air induction tubes, blocking the flow of air and fuel into the engine.

The helicopter, a Model 269A, had been manufactured by Hughes Tool Company—Aircraft Division and sold to the United States Army in 1968. Hughes Tool Company held the type certificate for the Model 269A, which had been issued by the Federal Aviation Administration (FAA). *See generally* 49 U.S.C. § 44704(a) (stating type certificate is issued upon a finding by the FAA "that the aircraft . . . is properly designed and manufactured, performs properly, and meets the regulations and minimum standards prescribed under section 44701(a)").

Discovery in this case disclosed that in the 1960s there were reports of engine stoppages in the model 269A, presumably from a defect in the air filter housing. As a result, Hughes Tool added stiffening beads to the side of the housing to prevent cracking, incorporating this design change into production components in 1966. Hughes Tool received no further reports of similar problems following implementation of this change. For reasons not disclosed in the record, the air filter housing of the helicopter involved in the accident at issue here did not have the stiffening beads.

After some intermediate transfers of the type certificate, Schweizer purchased the Model 269 product line, including the FAA-issued type certificate, in 1986 from McDonnell Douglas Helicopter Company. Although Schweizer has never manufactured a model 269A helicopter, it has made 269C and 269D series helicopters under the type certificate purchased from McDonnell Douglas. In addition, it has provided maintenance support materials and services for the 269A model to various subscribers, one of them being the City of Cedar Rapids aviation department.

Prior to Mason's accident, the City had paid a fee to subscribe to certain Schweizer publications, including Schweizer's Handbook of Maintenance Instruction for Hughes 269A Helicopters. The subscription service arguably promoted the use of Schweizer for purchase of replacement parts. As part of the subscription service, Schweizer's personnel were available to consult with the City's mechanics by telephone. The record shows that City aviation maintenance personnel relied upon the handbook for guidance in inspecting and maintaining the helicopter.

Schweizer had a procedure in place to encourage operators to provide reports on material component part failures or malfunctions, and received such reports daily. Prior to this accident, it had never received a report of engine stoppage due to air filter housing cracks or failures. There was evidence, however, that Schweizer was aware of previous problems with the air filter housing and that Hughes Tool had made design changes. On the other hand, Schweizer had no knowledge that the helicopter involved in this case did not have the modified housing.

The record reveals the City's director of maintenance had inspected the air filter housing and other parts of the helicopter in question on August 16, 1996, three days before the crash. He was aware at the time of his inspection that a cracked housing presents a safety issue and that a helicopter with a cracked air filter housing would not be airworthy. The director did not identify any cracks in the housing at the time of his inspection.

On May 5, 1998, Mason filed suit against Schweizer, alleging claims based on strict liability, implied warranties of merchantability and fitness for a particular purpose, and negligence.[1] Schweizer raised the GARA statute of repose as an affirmative defense. This statute imposes a cutoff on all civil actions against a manufacturer for death, injury or property damage caused by general aviation aircraft and their component parts eighteen years from the date of initial delivery of the aircraft. *See* 49 U.S.C. § 40101 note, §§ 2(a), 3(4).

After discovery, Schweizer filed a motion for summary judgment, asserting that the plaintiff's claims were barred by the statute of repose as a matter of law. It argued it was being sued in its capacity as a manufacturer of the helicopter and its components and, since the helicopter had been delivered to the initial purchaser more than eighteen years ago, suit was barred.

Mason resisted Schweizer's motion, asserting his claim against Schweizer was not based upon a products liability theory, or on any relationship between Schweizer and the actual manufacturer. Rather, contended Mason, his suit was based on Restatement (Second) of Torts section 324A, liability to a third person for negligent performance of an undertaking, based on Schweizer's provision of maintenance materials to the City of Cedar Rapids that omitted "information regarding the existence, nature, and extent of the risk caused by plastic cracks in the air filter housing." Mason argued that Schweizer was not a "manufacturer" of the helicopter within the meaning of GARA, nor was Schweizer being sued "in its capacity as a manufacturer" as required by the statute of repose.

The district court held that Schweizer, by virtue of its purchase of the type certificate, was the successor in interest of the original manufacturer and entitled to the protection of the statute of repose as a manufacturer. It also concluded that the actions Mason alleged Schweizer failed to take were based upon Schweizer's status as a manufacturer. The court ruled, therefore, that suit was barred.

Mason has now appealed. He claims the district court erred in concluding that the GARA statute of repose applied here. First, Mason contends Schweizer is not the "manufacturer" of the helicopter within the meaning of the statute. Second, he argues that even if Schweizer is the manu-

---

1. Mason also sued the City, two co-employees, and McDonnell Douglas. His claims against these defendants were eventually either set-tled or dismissed and are not the subject of this appeal.

facturer, his theory of recovery is not based upon Schweizer's status as the manufacturer, but rather upon Schweizer's negligence in the performance of an independent undertaking pursuant to Restatement section 324A. Finally, he asserts that GARA does not bar his suit against Schweizer because Schweizer's negligent acts and omissions occurred within the past eighteen years, thereby falling within the "rolling provision" of the statute of repose. *See* 49 U.S.C. § 40101 note, § 2(a)(2).

## II. *Scope of Review.*

■■■ We review a district court's summary judgment ruling for correction of errors of law. *See Cato v. Am. Suzuki Motor Corp.*, 622 N.W.2d 486, 494 (Iowa 2001). Summary judgment is appropriate when the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). In determining whether the district court correctly concluded that this standard was met, we view the record in the light most favorable to the nonmoving party. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000).

## III. *For Purposes of GARA's Statute of Repose, Was Schweizer the Manufacturer of the Hughes Model 269A Helicopter Involved in This Lawsuit?*

GARA was enacted in 1994 in an attempt to help "bolster the aviation industry by relieving it from an 'onslaught of product liability litigation.'" Jennifer L. Anton, *A Critical Evaluation of the General Aviation Revitalization Act of 1994*, 63 J. Air L. & Com. 759, 762 (1994) (citation omitted) [hereinafter "Anton"]. Congress found that an important cause of the "serious decline" in the manufacture and sale of

general aviation aircraft and aircraft parts in the United States was "the tremendous increase in the industry's liability insurance costs." H.R.Rep. No. 103–525, pt. 1, at 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1638. It was believed that relief from the long tail of liability would revitalize the industry. *Id.* at 2–3, *reprinted in* 1994 U.S.C.C.A.N. at 1639–40. The adoption of a statute of repose was justified in committee hearings by recognition of the industry's need for protection from endless liability and the protection of the public provided by the pervasive federal regulatory control of the aviation industry:

> The legislation attempts to strike a fair balance by providing some certainty to manufacturers, which will spur the development of new jobs, while preserving victims' right to bring suit for compensation in certain particularly compelling circumstances. In essence, the bill acknowledges that, for those general aviation aircraft and component parts in service beyond the statute of repose, any design or manufacturing defect not prevented or identified by the Federal regulatory process by then should, in most instances, have manifested itself. . . .

H.R.Rep. No. 103–525, pt. 2, at 6 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1644, 1648.

GARA's statute of repose provides in pertinent part:

> [N]o civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—
>
> > (1) after the applicable limitation period [18 years] beginning on—

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

49 U.S.C. § 40101 note, § 2(a). Although there are exceptions to this statutory bar, *see id.* § 2(b), none are implicated here. GARA also provides for a preemption of state law: "This section supersedes any State law to the extent that such law permits a civil action described in subsection (a) to be brought after the applicable limitation period for such civil action established by subsection (a)." *Id.* § 2(d).

In asserting that the federal statute of repose does not apply here, Mason claims Schweizer is not a "manufacturer" within the meaning of GARA because it did not make the helicopter that crashed. Schweizer argues that because it has acquired the type certificate and has the right to manufacture model 269 helicopters, it has stepped into the shoes of the manufacturer and is, therefore, within the group Congress intended to protect.

■ "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199, 204 (1979); *accord Iowa Comprehen-sive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.,* 606 N.W.2d 359, 363 (Iowa 2000). "Only when the terms of a statute are ambiguous do we engage in an analysis of legislative intent by applying rules of statutory construction." *Garwick v. Iowa Dep't of Transp.,* 611 N.W.2d 286, 289 (Iowa 2000). In attempting to ascertain legislative intent, we look not only to the words used, "but also to the context within which they appear." *Top of Iowa Coop. v. Sime Farms, Inc.,* 608 N.W.2d 454, 460 (Iowa 2000). "The legislative history of the statute is also helpful in determining Congress's purpose in enacting a particular provision. Once we have determined Congress's intent, we interpret the statute so as to give effect to the purpose underlying the legislation." *Id.*

■ GARA does not define the term "manufacturer." Black's Law Dictionary defines this word as an "entity engaged in producing or assembling new products." *Black's Law Dictionary* 977 (7th ed.1999). In this case, it is undisputed that Schweizer did not make or produce the helicopter or the air filter housing at issue. Nonetheless, it is part of the general aviation industry and, more importantly, is engaged in producing current models of the aircraft at issue here. We think, in the context of this statute, that the scope of the word "manufacturer" is uncertain. Therefore, it is appropriate to consider the legislative history and the purpose underlying the statute in determining whether an entity that acquires the type certificate from the original manufacturer is also entitled to the protection of the statute of repose.

We agree with the appellate court in *Burroughs v. Precision Airmotive Corp.,* 78 Cal.App.4th 681, 93 Cal.Rptr.2d 124, 132 (Ct.App.2000), that it would be contrary to Congress's purpose to deny the protection of GARA to a manufacturer

who steps into the shoes of the original manufacturer by acquiring the type certificate. In *Burroughs*, the plaintiffs suffered injuries in the crash of a light aircraft, allegedly due to a malfunction in the engine's carburetor. 93 Cal.Rptr.2d at 126. The defendant was an aircraft parts manufacturer who had not sold the particular model of carburetor involved in the accident but had acquired the product line from a predecessor who had purchased it from the original manufacturer. *Id.* The trial court granted summary judgment to the defendant, "finding that the federal statute barred [the plaintiffs'] claims against [the] defendant in its capacity as successor to the original manufacturer." *Id.* This decision was affirmed on appeal:

> Although [the defendant] did not actually manufacture the particular carburetor in this case, it is a manufacturer of general aviation aircraft parts, including carburetors, and it took over the manufacturer's responsibilities for the Marvel-Schebler product line. [The defendant] is part of the general aviation industry which GARA was specifically enacted to "revitalize," ... and [the defendant] is thus precisely the type of entity GARA was designed to protect from the long tail of liability. The central objective of GARA would be materially undermined if its protection did not apply to a successor to the manufacturer who, as part of its ongoing business, acquired a product line long after the particular product had been discontinued and years after the statute of repose had run as to the original manufacturer. To construe GARA to allow liability claims against the successor manufacturer in these circumstances while barring the same claims against the actual manufacturer would defeat its purpose.

*Id.* at 132.

■ The plaintiff here argues that under Iowa law governing the corporate liability of successor entities, the defendant is not a successor manufacturer. We, like the court in *Burroughs*, do not think state law should govern the determination of who is a successor manufacturer under GARA. *Id.* There is a "general assumption that 'in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law.'" *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43, 109 S.Ct. 1597, 1605, 104 L.Ed.2d 29, 43 (1989) (citation omitted). One reason for this presumption is that "federal statutes are generally intended to have uniform nationwide application." *Id.* at 43, 109 S.Ct. at 1605–06, 104 L.Ed.2d at 43. We find nothing in GARA to indicate that the liability of a successor manufacturer depends on where the suit is filed. Moreover, it would be contrary to Congress's intent to revitalize the entire industry to have application of the protective statute of repose vary from state to state. Therefore, we decline Mason's request to examine the defendant's status as a successor manufacturer under Iowa law.

In summary, we conclude Schweizer is a "manufacturer" within the meaning of GARA. By acquiring the type certificate to the model 269 product line, it stepped into the shoes of the original manufacturer and is entitled to the protection of the eighteen-year statute of repose.

IV. *Is This Action Brought Against Schweizer "in its Capacity as a Manufacturer"?*

■ GARA's statute of repose bars only those civil actions brought against a manufacturer "in its capacity as a manufacturer." 49 U.S.C. § 40101 note, § 2(a). The claims pled against Schweizer are premised on theories of strict liability, implied

warranty of merchantability and implied warranty of fitness for a particular purpose, as well as negligence. As the plaintiff implicitly concedes on appeal, the strict liability claims and warranty claims are indisputably based on Schweizer's status as a manufacturer and, accordingly, are barred by the statute of repose unless these claims fall within the statutory extension for new parts or components, an issue we address later. *See* 49 U.S.C. § 40101 note, § 2(a)(2) (providing that the limitation period for any new component or part begins "on the date of completion of the replacement or addition"). Therefore, our only concern at this juncture is whether Schweizer's alleged liability for a negligently performed undertaking is based on its capacity as the manufacturer of the helicopter.

Mason contends that its negligence claim rests on Schweizer's undertaking to sell maintenance materials and its failure to include in those materials a warning of the potential risks of a cracked housing and that such cracks would render the helicopter not airworthy. He asserts Schweizer's duty to warn under these circumstances is independent of its obligations as a manufacturer or holder of the type certificate. The defendant argues in response that GARA protects manufacturers against all failure-to-warn claims, because any duty to warn, regardless of the theory, is a duty imposed on the manufacturer in its capacity as a manufacturer.

We begin our analysis with the observation that the original manufacturer had a legal obligation to provide a "maintenance manual ... contain[ing] information which ... [is] essential for the proper maintenance of the rotorcraft." Civil Air Regulations, 14 C.F.R. § 6.719 (Rev.1952 & Supp.

1956).[2] We think it could hardly be disputed that had Hughes Tool, the original manufacturer, provided updated manuals for a fee that it would have been doing so "in its capacity as a manufacturer." *See Alter v. Bell Helicopter Textron, Inc.*, 944 F.Supp. 531, 540 (S.D.Tex.1996) (holding "the manufacturer's provision of maintenance and repair manuals was part of its duty to warn *as a manufacturer*" (emphasis added)); *Burroughs*, 93 Cal.Rptr.2d at 133–34 (holding that "claims based on the alleged failure to deliver adequate warnings of known defects" are claims against the manufacturer "in its capacity as a manufacturer"); *Campbell v. Parker–Hannifin Corp.*, 69 Cal.App.4th 1534, 82 Cal.Rptr.2d 202, 210 (Ct.App.1999) (holding a failure-to-warn claim is based on the manufacturer's actions in "its role as manufacturer"). Any other interpretation would subject manufacturers to liability on failure-to-warn claims without regard to the statute of repose, thereby thwarting Congress's objective in enacting the statute.

Similarly, we think that a successor manufacturer who has acquired the type certificate and who manufactures updated versions of the aircraft is likewise acting "in its capacity as a manufacturer" when it makes revised versions of the maintenance manual available for a fee. *See Burroughs*, 93 Cal.Rptr.2d at 132 ("We conclude ... if GARA applies to shield the original manufacturer of a defective product from product liability claims such as the failure to warn alleged here, a successor manufacturer who has taken over the duties and obligations of the original manufacturer as to that product is also protected from liability for such claims."). Therefore, whether the theory of liability is based on products law or on the negligent

---

**2.** The FAA issued the type certificate for the model 269 in 1959, so we refer to the regulations in effect at that time.

performance of an undertaking, the successor manufacturer who issues updated manuals is acting in its capacity as a manufacturer and is entitled to the protection of the GARA statute of repose. *See Alter,* 944 F.Supp. at 538–40 (holding GARA's statute of repose precluded potential liability of manufacturer under any theory, including negligent performance of an undertaking under section 324A, "based on allegedly misleading inspection instructions in the maintenance manual that failed to warn or allow detection of the design flaw" in the subject helicopter); *see also Schamel v. Textron–Lycoming,* 1 F.3d 655, 657 (7th Cir.1993) (stating in case involving Indiana products liability statute of repose, "The provision of service manuals and other sources of service information is not a separate and discrete, post-sale undertaking pursuant to § 324A; rather, such information is generally necessary to satisfy the manufacturer's duty to warn."); *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207, 212 (Ind.1981) (holding that failure-to-warn claim against aircraft manufacturer is, ultimately, a products liability claim because it is premised on damage caused by "the manufacture, construction or design of the product").

We have not overlooked the legislative history upon which Mason relies to support his argument that the services provided by Schweizer went beyond its role as the manufacturer. The legislative history cited by Mason shows the following reason for limiting the reach of the statute of repose to suits brought against a manufacturer "in its capacity as a manufacturer":

> The latter limitation is intended to insure that parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity. For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such act was a proximate cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic.

H.R. Rep. 103–525, pt. 2, at 7, *reprinted in* 1994 U.S.C.C.A.N. at 1649. One author analyzing GARA made the following observation with respect to this limitation:

> When the manufacturer acts in any capacity other than its role in the manufacturing of the original part, it loses the protection of GARA to the extent that its role caused or contributed to the accident. What other role might a manufacturer play? Many component part manufacturers offer overhaul and part rebuilding services. In addition, some manufacturers are becoming involved in certain maintenance programs related to their own aircraft, as their expertise and facilities allow them to actively compete in the industry. As a result, *if a manufacturer plays a role deviating from that of an original manufacturer,* it will not reap protection under GARA.

Robert F. Hedrick, *A Close and Critical Analysis of the New General Aviation Revitalization Act,* 62 J. Air L. & Com. 385, 399 (1996) (emphasis added); *see also* Anton, 63 J. Air L. & Com. at 789 ("Since many manufacturers provide overhaul, rebuilding services, and maintenance services, their work in those capacities may be susceptible to suit after the expiration of the period of repose.").

We do not think Schweizer crossed the line from manufacturer to service provider by selling updated maintenance manuals. The California court rejected a similar contention in *Burroughs* where the successor manufacturer had provided service information, holding "itself out as the source of FAA-approved service information, parts

catalogues, and replacement parts" to its "potential economic benefit." 93 Cal. Rptr.2d at 136. Noting that the defendant had not actually performed services or repairs on the allegedly defective carburetor, the court concluded the successor manufacturer had not "acted in any capacity other than as a manufacturer carrying out its obligation to ensure airworthiness." *Id.* at 138. We need not consider whether a manufacturer who provides services beyond updates to the FAA-required maintenance manual, such as telephone consultation on service issues, would likewise be deemed to be acting "in its capacity as a manufacturer." That is because Mason makes no allegation in the present case that erroneous advice was given as part of Schweizer's telephone consultation service, only that Schweizer failed to give adequate warnings with respect to the air filter housing in its written materials. Thus, we hold the allegedly negligent acts by Schweizer were performed "in its capacity as a manufacturer," thereby falling within the protection of the statute of repose.

### V. Does the "Rolling Provision" of the GARA Statute of Repose Apply Here?

Mason asserts that even if the GARA statute of repose is applicable here, the maintenance manual provided by Schweizer is a replacement part subject to GARA's "rolling provision," which in essence triggers a new statutory period for a replacement part running from the date of replacement. *See* 49 U.S.C. § 40101 note, § 2(a)(2). Because the sale of instructional materials to the City of Cedar Rapids occurred within eighteen years of commencement of suit, argues Mason, his claims based on the absence of warnings in these materials are not barred.

Courts are divided on whether manuals are a "part" subject to the rolling provision of GARA. *Compare Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1157 (9th Cir.2000) (holding an aircraft's flight manual is a part of the aircraft, not a separate product), *with Alter*, 944 F.Supp. at 538 (holding manufacturer's maintenance and repair manuals and revisions to those manuals were not new component systems). We need not decide this issue, however, because even if the manual at issue here were considered a component of the helicopter, it would not trigger GARA's rolling provision.

In *Caldwell*, the court held the mere fact a manual could be considered a part of the aircraft was not sufficient to start a new statutory period every time a revised version of the manual was distributed. 230 F.3d at 1158. It explained:

A revision to the manual does not implicate GARA's rolling provision, however, unless the revised part "is alleged to have caused [the] death, injury, or damage." Just as the installation of a new rotor blade does not start the 18–year period of repose anew for purposes of an action for damages due to a faulty fuel system, a revision to any part of the manual except that which describes the fuel system would be irrelevant here. Furthermore, mere cosmetic changes (like changing the manual's typeface) do not revive the statute of repose. In sum, if Defendant substantively altered, or deleted, a warning about the fuel system from the manual within the last 18 years, and it is alleged that the revision or omission is the proximate cause of the accident, then GARA does not bar the action.

*Id.* (citation omitted); *accord Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002) (restating *Caldwell* holding that mere failure-to-warn, as opposed to a revision to a manual,

will not allow a plaintiff to bypass the statute of repose). We agree with this analysis.

Turning to the record in the present case, we find bare allegations that Schweizer failed to warn the City of the need to inspect the housing and the dangers of a cracked housing. There is no evidence, nor is the argument even made, that Schweizer revised the manual prepared by its predecessors in any substantive fashion causally related to the crash in this case. Consequently, the rolling provision does not apply. *Carolina Indus. Prods., Inc. v. Learjet, Inc.,* 189 F.Supp.2d 1147, 1170–71 (D.Kan.2001) (holding GARA statute of repose did not start from date maintenance manual was issued where there was no allegation that accident was caused by an alteration in the manual within eighteen years of the accident); *cf. Butchkosky v. Enstrom Helicopter Corp.,* 855 F.Supp. 1251, 1257 (S.D.Fla.1993) (holding, under Florida products liability statute of repose, that mere issuance of maintenance manual within the period of repose could not be used to circumvent statutory bar, as "[t]he result would be evisceration of the statute of repose"). Therefore, the district court properly granted summary judgment to Schweizer.

VI. *Summary.*

We hold that Schweizer, as the holder of the type certificate for the Hughes model 269A helicopter, is a manufacturer within the meaning of the GARA statute of repose. Moreover, the failure-to-warn claim at issue in this case implicates Schweizer's role as a manufacturer, not as a maintenance provider, regardless of the theoretical label attached to the claim. Finally, we hold that the rolling provision of the statute of repose is not triggered upon the issuance or sale of a maintenance manual unless the manual contains a revision that is causally related to the injury-producing event. Because the claim here rests on Schweizer's failure to warn rather than any revision or change to the maintenance manual made by Schweizer, the rolling provision of the statute of repose does not apply. Accordingly, the trial court correctly ruled that this lawsuit, commenced more than eighteen years after the helicopter in question was delivered to its first purchaser, is barred by GARA as a matter of law. We affirm the district court's order granting summary judgment to Schweizer.

**AFFIRMED.**

All justices concur except CARTER, J., who takes no part.