ESTATE OF Henry F. GROCHOWSKE, III by its
Personal Representative, Donna L. Grochowske,
Plaintiff-Appellant,†

v.

Russell ROMEY d/b/a D&G Supply, Goode
Engineering Corporation, Paul J. Goode and
Avstar Aircraft Accessories, Inc., Defendants,

PRECISION AIRMOTIVE CORPORATION and Precision
Airmotive, LLC, Defendants-Respondents.

ESTATE OF Vincent M. BOBOWSKI by its Personal
Representative, Eugene R. Bobowski,
Plaintiff-Appellant,

v.

Russell ROMEY d/b/a D&G Supply and Blackhawk
Aircraft Maintenance, Inc., Defendants,

PRECISION AIRMOTIVE CORPORATION and Precision
Airmotive, LLC, Defendants-Respondents.

ESTATE OF Brian E. WHITESIDE by its Special
Administrator, Sharon Whiteside,
Plaintiff-Appellant,

v.

Russell ROMEY d/b/a D&G Supply,
Defendant,

† Petition for Review Filed.

PRECISION AIRMOTIVE CORPORATION and Precision
Airmotive, LLC, Defendants-Respondents.

Court of Appeals

*No. 2010AP1432. Submitted on briefs June 7, 2011.*
*—Decided March 14, 2012.*

2012 WI App 41

(Also reported in 813 N.W.2d 687.)

614

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark M. Milos* of *Milos Law, LLC*, Kenosha, and *Paul R. Borth* of *Nolan Law Group*, Chicago, Illinois.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Patrick S. Nolan* of *Quarles & Brady LLP*, Milwaukee, and *Jonathan R. Buck* of *Perkins Coie LLP*, Chicago, Illinois.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. NEUBAUER, P.J. This action arises out of a general aviation aircraft accident. The administrators/representatives of the deceaseds' estates (plaintiffs) brought a wrongful death action against Precision Airmotive Corporation and Precision Airmotive, LLC (collectively, Precision) after it was determined that the failure of a component originally manufactured by Precision in 1973 was the primary cause of the crash. The plaintiffs claim that Precision breached its duty to warn and to provide adequate instructions for the component in a maintenance manual. The plaintiffs contend that the trial court erred in granting summary judgment to Precision based on its determination that (1) their claim was barred by the statute of repose for actions against aircraft manufacturers under the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103–298, 108 Stat. 1552 (reprinted in notes to 49 U.S.C.A. § 40101), and (2) they failed as a matter of law to present evidence that Precision knew of the defect in its component and failed to comply with its obligation to report the defect to the Federal Aviation Agency (FAA) so as to fall under the fraud exception to GARA's statute of repose, *see* GARA § (2)(b)(1). We conclude that summary judgment was appropriately granted and affirm.

¶ 2. GARA is a statute of repose that bars civil actions arising out of accidents involving aircrafts and their components or parts that are more than eighteen years old. We agree with a growing majority of courts concluding that GARA's statute of repose bars both an action based on a design flaw in a component and an action for failure to warn of, or provide proper instructions to remedy, that flaw. Given the facts established at summary judgment, we conclude that GARA's eighteen-year limitation applies to the plaintiffs' claims based on the component maintenance manual. We further conclude that the plaintiffs have failed to establish a genuine issue of material fact as to the application of the fraud exception.

## BACKGROUND

¶ 3. On September 30, 2004, a Beech Aircraft model B95A airplane took off from Burlington Airport and crashed nearby. All three passengers, Henry Grochowske, III, Vincent Bobowski, and Brian Whiteside suffered fatal injuries. The crash was investigated by the National Transportation Safety Board (NTSB), and the investigation revealed that a regulator nut attached to the right engine's fuel servo had come loose from the fuel diaphragm stem causing insufficient fuel to be delivered to the engine. A fuel servo is part of a fuel injection system that meters fuel to the aircraft engine.[1]

---

[1] Roger Hall, the operations manager at Precision, explained that, in the RSA-5AD1 fuel servo, there is an outer regulator nut on the fuel diaphragm stem. The outer regulator nut is considered to be a critical component of the RSA-5AD1 fuel servo, and if the outer regulator nut were to come off the

¶ 4. The fuel servo, model RSA-5AD1, was manufactured in 1973 by Bendix Corporation, a predecessor to defendant, Precision Airmotive, LLC.[2] The servo was originally installed on a Piper Aztec airplane in November of 1973. Sometime thereafter, the servo was reconfigured and was eventually installed on the accident aircraft in 1986. Precision took no part in the reconfiguration of the servo and had no contact with it after 1973. The servo was then overhauled in 2000 by D&G Supply, an FAA-certified repair station. Although Precision only authorized the use of Precision replacement parts when overhauling its servos, D&G used a fuel diaphragm stem and outer regulator nut manufactured by Goode Engineering Corporation in the overhaul of the fuel servo.[3]

¶ 5. Pursuant to FAA obligations, Precision also distributes maintenance manuals which instruct as to the process of overhauling its fuel servos and includes the procedure for securing the regulator nut to the fuel regulator stem. In 1982, Bendix issued the servo overhaul manuals that dictated the use of Loctite, an industrial adhesive, as the method for securing the regulator nut to the regulator stem. The manual, revised and issued by Precision in 1992, continued to recommend the use of Loctite with added cautions, including to "apply Loctite very sparingly." Prior to the crash in question, Precision had investigated a similar

---

end of the fuel diaphragm stem, an instantaneous and near total shut off of fuel to the engine would result. We note that the fuel diaphragm stem is also referred to in the record as the valve stem and regulator stem.

 [2] Precision acquired the Bendix Model RS/RSA product line in January 1988.

 [3] Goode Engineering's parts were approved by the FAA for use as replacement parts on the RSA-5AD1 fuel servo.

incident in 1997 in which the regulator nut on the fuel servo's regulator stem became loose and caused an engine to lose power.[4]

¶ 6. After the 2004 crash, the plaintiffs filed suit against Precision claiming product liability and negligence for defects in the RSA-5AD1 fuel servo and failure to warn. The plaintiffs alleged in part that Precision's fuel servo "contained a spring, screw and nut assembly to control fuel flow that permitted the nut to back off of its screw thread and improperly distribute fuel to the engine" and that the crash was a "direct and proximate result of the defective and unreasonably dangerous condition of the subject fuel servo and/or the subject flow divider." As an affirmative defense, Precision asserted that the plaintiffs' claims regarding a fuel servo manufactured more than thirty years prior were barred by GARA's eighteen-year statute of repose. Precision later moved for summary judgment on this ground. Prior to the hearing on summary judgment, the plaintiffs amended their complaint and limited their claims against Precision to those involving Precision's component maintenance manual for its fuel servo.[5]

_____

[4] The plaintiffs allege, without citation, that Precision investigated another similar incident in 2000. Our search of the record did not uncover documentation as to this incident investigation.

[5] The plaintiffs also filed suit against Russell Romey, d/b/a D&G Supply, who was involved in the overhaul, and Goode Engineering Corporation, which supplied the replacement parts used in the overhaul. In addition to claiming that D&G negligently overhauled the fuel servo, the plaintiffs assert that the outer regulator nut sold by Goode Engineering was defective. Their expert asserted that it had poorly formed threads with a defective geometry, the threads were irregular in shape and nonuniform, and the threads contained machine marks and

620

¶ 7. Specifically, the plaintiffs, in their third amended complaint, claimed that Precision was negligent in (1) failing to provide proper and adequate warnings regarding knowledge of disengagement of the outer regulator nut on the fuel servo, (2) failing to amend the manual to reflect warnings of injury and death should the nut disengage, (3) failing to issue a service bulletin containing information on Precision's knowledge of the problems with the regulator nut, (4) failing to inform parties of the need for regular inspections of the nut, and (5) failing to set forth proper instructions for the safe installation and lasting retention of the nut. The plaintiffs asserted that Precision should have dictated a procedure that permanently affixed the regulator nut using physical "crimping," as opposed to the use of the adhesive Loctite.

¶ 8. After discovery, Precision moved for summary judgment. The trial court granted summary judgment in favor of Precision, ruling that the plaintiffs' claims are barred by the statute of repose set forth in GARA. The trial court also found that the plaintiffs did not present sufficient evidence to create a material question of fact as to whether Precision knowingly concealed or withheld information from the FAA so as to invoke the fraud exception to GARA's statute of repose.

¶ 9. The plaintiffs appeal on two main issues. First, the plaintiffs contend that Precision's maintenance manual for the fuel servo is not a component or "part" of the accident aircraft or the subject fuel servo and, thus, no provision of GARA—including the eighteen-year statute of repose—applies to their claims

cadmium. According to the plaintiffs' expert, these defects caused the regulator nut to back off the stem of the fuel diaphragm.

621

against Precision. Second, the plaintiffs claim the trial court erred in its determination that they failed to present sufficient evidence to trigger GARA's fraud exception.

## DISCUSSION

*Standard of Review and Applicable Law*

¶ 10. The standard of review for questions of summary judgment is de novo. *Goudy v. Yamaha Motor Corp.*, 2010 WI App 55, ¶ 9, 324 Wis. 2d 441, 782 N.W.2d 114. As such, we review a summary judgment without deference to the trial court, but benefiting from its analysis. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). According to Wisconsin law, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2009–10).

¶ 11. The claims in this case are governed by the General Aviation Revitalization Act of 1994.[6] Under GARA, no civil action may be brought against a manu-

---

[6] GARA "supersedes any State law to the extent that such law permits a civil action ... to be brought after the ... limitation period." GARA § 2(d). GARA provides in relevant part:

SEC. 2. TIME LIMITATIONS ON CIVIL ACTIONS AGAINST AIRCRAFT MANUFACTURERS.

(a) IN GENERAL.—Except as provided in subsection (b), no civil action for damages for death or injury to persons ... arising out of an accident involving a general aviation aircraft may be brought

622

facturer for death, injury or property damage caused by an accident involving a general aviation aircraft and its components or parts if the accident occurred more than eighteen years after the initial delivery of the aircraft or the installation or addition of the component or other

against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—

(1) after the applicable limitation period beginning on—

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

(b) EXCEPTIONS.—Subsection (a) does not apply—

(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with . . . obligations with respect to continuing airworthiness of, an aircraft or a component . . . knowingly misrepresented to the [FAA], or concealed or withheld from the [FAA], required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component . . . or other part, that is causally related to the harm which the claimant allegedly suffered[.]

. . . .

SEC. 3. OTHER DEFINITIONS.

For purposes of this Act—

. . . .

(3) the term 'limitation period' means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft . . . .

623

part. GARA §§ 2(a), 3(3). GARA also provides a rolling statute of repose for civil actions brought against a manufacturer of any new component, system, subassembly, or other part of the aircraft. *Id.*, § 2(a)(2). The statute of repose does not apply, however, if the claimant pleads with specificity the facts necessary to prove, and does prove, that the manufacturer knowingly misrepresented, concealed or withheld from the FAA required information that is material and relevant to the performance or the maintenance or operation of the aircraft or its components. *Id.*, § 2(b)(1). This is known as the "fraud exception" to the GARA statute of repose, *see Aubrey v. Precision Airmotive LLC*, 7 A.3d 256, 259–60 (Pa. Super. Ct. 2010), meaning that it will not apply if the manufacturer knows of a defect and fails to comply with its obligation to report the defect to the FAA.

¶ 12. The House of Representatives report, issued by the Committee on Public Works and Transportation, states that GARA was proposed to protect manufacturers of small aircrafts and aircraft parts from excessive liability costs. H.R. REP. No. 103–525(I), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1994 WL 235994. In the years leading up to GARA, excessive liability costs contributed to a "serious decline in the manufacture and sale of general aviation aircraft by United States companies" which in turn involved loss of jobs and a worsening in the United States' position in international trade because foreign competitors were often able to take advantage of less costly liability systems in their own country. *Id.* Thus, limiting tort claims through GARA would provide certainty to manufacturers and encourage the development of jobs and growth of the industry. *See id.*

624

¶ 13. As part of the limitation on tort claims, the committee noted the "strong need for a statute of repose for aircrafts which are more than 18 years old" because those aircrafts are "likely to have had a number of owners and to have gone through modifications and major maintenance procedures," making it "increasingly difficult to determine whether the manufacturer or some other person who used or repaired the aircraft is primarily responsible for a defect." *Id.* The committee noted that nearly all defects are discovered early in the life of an aircraft and cited a study showing that only a small percentage of accidents are caused by a design or manufacturing defect. *Id.* "In essence, the bill acknowledges that, for those general aviation aircraft and component parts in service beyond the statute of repose, any design or manufacturing defect not prevented or identified by the Federal regulatory process by then should, in most instances, have manifested itself." H.R. REP. No. 103–525(II) (Judiciary Committee), *reprinted in* 1994 U.S.C.C.A.N. 1644, 1994 WL 422719. Ultimately, GARA seeks to "strike[] a reasonable balance between the sometimes conflicting objectives of keeping the price of general aviation aircraft at an affordable level and awarding fair compensation to persons injured in general aviation accidents." H.R. REP. No. 103–525(I).

¶ 14. GARA is a "classic statute of repose. It does not run from the date on which an injury occurs . . . . [I]t runs from what amounts to the date of the first transfer from the manufacturer." *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001) (citation omitted). Whether GARA's statute of repose applies to the plaintiffs' claim is a question of law we review de novo. *See Goudy*, 324 Wis. 2d 441, ¶ 10 (statutory interpretation

and the application of a statute to specific facts are questions of law that we review de novo).

*The Component Maintenance Manual is not a Separate Product upon Which Plaintiffs May Base a Claim to Avoid the Statute of Repose.*

■

¶ 15. The plaintiffs concede that any claims alleging design or manufacturing defects in the fuel servo manufactured in 1973 fall squarely under GARA's protection. However, they contend their claim is targeted only at Precision's component maintenance manual. They allege that Precision, in its manual, negligently failed to warn owners and mechanics of a safety hazard arising from problems with the fuel servo's regulator nut and failed to provide adequate instructions and procedures to ensure the permanent retention of the regulator nut. The plaintiffs contend Precision is not being sued "in its capacity as the manufacturer of an aircraft part," and that GARA does not apply because the manual is not an airplane part. *See* GARA § 2(a).

> *1. The component maintenance manual was produced by Precision in its capacity as a manufacturer of the component.*

¶ 16. We turn first to the plaintiffs' contention that Precision was not acting in its capacity as a manufacturer when it caused or contributed to the aircraft accident, but rather as a publisher of a manual. Whether Precision was acting as a "manufacturer" within the meaning of GARA involves a question of law that requires us to interpret GARA and give effect to the legislative intent. *See Burton v. Twin Commander Aircraft LLC*, 254 P.3d 778, 783 (en banc) (Wash. 2011) (citing *Burroughs v. Precision Airmotive Corp.*, 93 Cal.

626

Rptr. 2d 124, 130 (Ct. App. 2000) (construction of GARA is a question of law, reviewed de novo)). In doing so, we look to other courts that have engaged in this analysis.

¶ 17. It is well established that a successor manufacturer who has taken over the duties and obligations of the original manufacturer as to a product is entitled to the same protections GARA would have extended to the original manufacturer. *Burton*, 254 P.3d at 784 (citing *Burroughs*, 93 Cal. Rptr. 2d at 132); *see also Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 548–49 (Iowa 2002). Here, Precision was granted Parts Manufacturer Approval (PMA) by the FAA to manufacture or produce the fuel servo in conformity with approved design data. As a holder of a PMA, Precision was subject to FAA reporting requirements as to any failure, malfunction or defect in any part manufactured by it that has resulted or could result in an aircraft incident and also to obligations implicit in those regulations requiring maintenance instructions for continued airworthiness. *See Burroughs*, 93 Cal. Rptr. 2d at 133. As such, Precision became the entity responsible for fulfilling the manufacturer's obligations for continued airworthiness and was, for purposes of the FAA, the "new manufacturer" of the fuel servo. *See Burton*, 254 P.3d at 784. Thus, to the extent it assumed and carried out the duties of Bendix, Precision is entitled to GARA's protection. *See id.*

¶ 18. This protection includes Precision's publication of maintenance manuals. In *Mason*, the court observed that a manufacturer has a legal obligation to provide maintenance manuals for its product. *Mason*, 653 N.W.2d at 550. The *Mason* court noted that it "could hardly be disputed" that an original manufacturer

which provides updated manuals for a fee does so "in its capacity as a manufacturer." *Id.* (citing *Alter v. Bell Helicopter Textron, Inc.*, 944 F. Supp. 531, 540 (S.D. Tex. 1996) ("the manufacturer's provision of maintenance and repair manuals was part of its duty to warn as a manufacturer"); *Burroughs*, 93 Cal. Rptr. 2d at 133–34 ("claims based on the alleged failure to deliver adequate warnings of known defects" are claims against the manufacturer "in its capacity as a manufacturer")); *see also Burton*, 254 P.3d at 785 (a service bulletin issued to satisfy manufacturer's reporting responsibilities is issued in the capacity of a manufacturer). Thus, the successor manufacturer who makes revised versions of the manual available for a fee is likewise "acting in its capacity as a manufacturer." *Mason*, 653 N.W.2d at 550–51.

¶ 19. The plaintiff's claims in *Mason* were similar to those in this case. In *Mason*, the plaintiff was injured when the helicopter he was piloting crashed after a complete engine failure caused by a crack in the air filter housing. *Id.* at 545. The helicopter had been manufactured by the defendant's predecessor company approximately twenty-eight years prior to the crash. *See id.* As here, the defendant produced a maintenance handbook available by paid subscription and it was used by the plaintiff's employer's maintenance personnel for inspecting and maintaining the helicopter. *Id.* The plaintiff argued that his claims were not made against the defendant in its capacity as a manufacturer, but in its undertaking to sell maintenance materials. *Id.* at 550. He argued that the defendant, in the maintenance manual it sold, failed to include a warning of the potential safety-risk that a cracked air filter housing would create. *Id.* The court determined that whether the plaintiff's theory of liability is based on product law

628

or negligence, a manufacturer who issues updated manuals is acting in its capacity as a manufacturer and is protected by GARA's statute of repose regardless of the theoretical label attached to the claim. *See id.* at 550–51, 553.[7]

■

¶ 20. We agree with the reasoning in *Mason.* Precision's predecessor, Bendix, produced a maintenance manual applicable only to the RSA-5AD1 fuel servo. As the plaintiffs point out, "The Maintenance Manual at issue provides detailed instructions about the overhaul, testing and troubleshooting of the Model RSA-5AD1 fuel servo." These instructions were based on knowledge that Bendix obtained in its capacity as a manufacturer of the part. The component maintenance manuals are not, as the plaintiffs suggest, akin to Sports Illustrated or TIME Magazine. Although the manuals may be available for purchase by subscription, they are not general publications; they are published by the manufacturer, in its capacity as a manufacturer, in fulfillment of its obligation to provide appropriate warnings and maintenance information about its product.[8]

---

[7] We note that this protection would not extend to those activities which "cross[] the line from manufacturer to service provider." *See Mason v. Schweizer Aircraft Corp.,* 653 N.W.2d 543, 551 (Iowa 2002). "For example, if the manufacturer committed a negligent act repairing or servicing an aircraft or as a pilot, and such act was the proximate cause of an accident, the victims would not be barred from bringing suit against the manufacturer acting in a capacity other than as a manufacturer." *Burroughs v. Precision Airmotive Corp.,* 93 Cal. Rptr. 2d 124, 131 (Ct. App. 2000).

[8] The plaintiffs argue for the application of the rationale used by the court in *Crouch v. Honeywell Int'l, Inc.,* No. 3:07–CV–638–S., 2010 WL 4449222 (W.D. Ky. Nov. 1, 2010). There, the court limited GARA protection to instances where a

2. *The plaintiffs' component maintenance manual claims are premised on a defect in the original component and are therefore barred by GARA's statute of repose.*

¶ 21. We turn next to the plaintiffs' claim that GARA's statute of repose does not apply because the component maintenance manual is a separate product that falls outside of GARA's reach. In so arguing, the plaintiffs focus on whether the manual was included in the initial sale of the airplane or the fuel servo, or whether the manual was ever aboard the aircraft or anywhere other than the D&G repair shop. The plaintiffs' inquiries are misplaced. The component maintenance manual must be assessed both in relation to the plaintiffs' claims and in relation to its component, the fuel servo.

¶ 22. Precision points to *Alter*, 944 F. Supp. at 538–39, as persuasive authority. We agree that it provides guidance. In *Alter*, the plaintiffs' decedents were killed in a helicopter crash. *Id.* at 533. An investigation determined that a compressor manufactured more than eighteen years before the accident failed, causing the crash. *See id.* at 536. The plaintiffs' claims were premised both on (1) the negligent design and manufacture of the helicopter and the compressor, "which had a propensity to prematurely fatigue and fail," and (2) the negligent drafting of the maintenance manuals which failed to

---

manufacturer was required by law to publish a maintenance manual. *Id.* at 2. In so arguing, the plaintiffs maintain that Precision was not required by the FAA to publish an overhaul manual for its fuel servo. Precision, citing to FAA Order No. 8110.42a, represents otherwise. Regardless, as the PMA holder, Precision is responsible for the continued airworthiness as the manufacturer of the component.

warn that the thickness of the engine compressor stator vane had to be checked at the root in order to determine the extent of wear. *Id.* at 533.

¶ 23. The *Alter* court held that because the helicopter and engine component were manufactured and delivered in 1975, GARA barred any possibility of recovery due to the negligent design, manufacture or testing of the helicopter or its components. *Id.* at 536–37. However, the plaintiffs asserted that GARA did not preclude recovery for defective marketing or failure to warn because the allegedly faulty maintenance manuals were new aircraft components subject to GARA's rolling provision. *Id.* at 537. In considering the plaintiffs' claim, the *Alter* court noted a number of federal courts which, in applying state statutes of repose similar to GARA, held that "manufacturers' maintenance and repair manuals are not a 'separate' product or component upon which plaintiffs may base a claim to avoid a repose statute." *Id.* at 538 (citing *Schamel v. Textron–Lycoming*, 1 F.3d 655, 657 (7th Cir. 1993); *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1220–21 (10th Cir. 1991); *Kochins v. Linden–Alimak , Inc.*, 799 F.2d 1128, 1135 (6th Cir. 1986); *Butchkosky v. Enstrom Helicopter Corp*, 855 F. Supp. 1251, 1257 (S.D. Fla. 1993)).

¶ 24. Central to each of these cases is that the maintenance manual claim or failure to warn claim was based on a defect in the aircraft or component which was covered by a statute of repose. *See Schamel*, 1 F.3d at 656–57 (alleging that the defendant manufactured and sold defective and unreasonably dangerous connecting rods and failed to develop and to provide service or fatigue limits for its connecting rods in its overhaul and service manuals); *Alexander*, 952 F.2d at 1221 ("the essence of plaintiffs' claims regarding the Beechcraft

A23A Musketeer fuel system is failure to warn of a dangerous condition which existed at the time of the original manufacture and delivery of the aircraft in 1967"); *Kochins*, 799 F.2d at 1132, 1135 (plaintiffs' claim based on allegedly defective part barred by statute of repose; instruction manual furnished for that allegedly defective product could not be a "product" and language of instruction could not be "defective or unreasonably dangerous" in itself); *Butchkosky*, 855 F. Supp. at 1255, 1257 (plaintiffs' claim based on design flaw in the component barred by statute of repose; claim based on manuals issued within statute of repose that failed to adequately correct the flaw are likewise barred).

¶ 25. In examining *Butchkosky*, the *Alter* court noted the plaintiffs' argument that because the repairs on the allegedly defective component were done according to the manufacturers' instruction manual, and the manual was issued within the repose period, the claim was still viable. *Alter*, 944 F. Supp. at 539. The *Butchkosky* court held that the plaintiffs' claims were barred by the state statute of repose, reasoning:

> To hold that [the defendant] should be liable because its manuals issued within the period of repose did not provide an adequate means of correcting the design flaw of the critical component, would be to *circumvent the statute of repose by providing a back door to sue for the design flaw—ostensibly not for the design flaw itself, but for the failure of the manual to adequately correct the flaw.* The result would be the evisceration of the statute of repose. If a plaintiff is precluded by the statute of repose from suing for a design flaw in a product, the plaintiff must also be precluded from suing for a failure to correct the design flaw, whether that failure be in the inadequacy of the text of a subsequently issued owner's manual or repair guidelines subsequently sent to mechanics.

*Alter*, 944 F. Supp. at 539–40 (quoting *Butchkosky*, 855 F. Supp. at 1255) (emphasis added).

¶ 26. After a lengthy discussion and examination of case law, the *Alter* court ultimately rejected the plaintiffs' claim, echoing the concerns addressed in *Butchkosky*:

> The complaint attempts to assert this as a replacement part theory by claiming that [the defendant] issued manuals within the repose period that did not adequately warn of the propensity of the [component] to fatigue and fail prematurely and to prescribe proper inspection procedures to detect this design flaw. GARA precludes any recovery under state law for latent defects present at the time of manufacture. Applying the authorities cited above, GARA also precludes the possibility that plaintiff could establish a cause of action under Texas law for defective marketing or failure to warn against [the defendant] based on allegedly misleading inspection instructions in the maintenance manual that failed to warn or allow detection of the design flaw.

*Alter*, 944 F. Supp. at 541.

¶ 27. The plaintiffs in this case frame their argument somewhat differently because Precision issued the manual well before the eighteen-year repose period.[9] Nevertheless, the reasoning in *Alter* is instructive. After examining the treatment of this issue by other courts, the *Alter* court rejected the notion that the

[9] It is undisputed that the component maintenance manual was originally published by Bendix in 1982, and the relevant design specifications and procedures related to the fuel servo remain substantially unchanged since then. While Precision issued a revised component maintenance manual in 1992 that continued to recommend the use of Loctite, but added cautions

provision of maintenance and repair instructions was a separate and discrete post-sale undertaking creating a separate cause of action. *Alter*, 944 F. Supp. at 540 n.5. The provision of a maintenance manual was part of a manufacturer's duty to warn, and the manual itself was simply "evidence proffered by plaintiffs which bears on a failure to warn theory" against the component manufacturer. *Id.* at 538 (citation omitted). Thus, a cause of action for failure of the manufacturer to warn of, or provide proper instructions to remedy, a design flaw is precluded by the statute of repose that bars a suit based on a design flaw in the component.

¶ 28. Here, the plaintiffs' claims involving the manufacturer's defective instructions are *based on* a defect in the 1973 fuel servo. The plaintiffs allege negligent failure to warn of a dangerous condition in the component—the disengagement of the regulator nut in the fuel servo. The plaintiffs further allege that the maintenance manual failed to properly instruct as to how to correct that design flaw. The plaintiffs do not assert that the manual is a defective or unreasonably dangerous product in itself, or that it gives rise to a claim independent of a defective component.[10]

---

regarding its application, plaintiffs do not contend that any revisions within the period of repose were the proximate cause of the accident.

[10] The plaintiffs cite to *Rogers v. Bell Helicopter Textron, Inc.*, 112 Cal. Rptr. 3d 1 (Ct. App. 2010), in support of their contention that if the manual is not a part of the airplane, it is a separate product and the eighteen-year statute of repose set forth in GARA does not apply. The plaintiffs' reliance on *Rogers* is misplaced. In *Rogers*, there was no allegation that the claim was premised on an underlying defect in the original aircraft. It appears that the claim was simply based on faulty instructions in the manual. *Id.* at 2.

■■

¶ 29. By enacting GARA, Congress intended to prevent claims against manufacturers for actions they took more than eighteen years ago. *See* H.R. REP. 103–525(I). The fuel servo at issue in this case was manufactured more than thirty years prior to the accident, and the decision to use Loctite was made more than twenty years prior to the accident.[11] We agree with the above decisions holding that the statute of repose applies to an attempt to sue a manufacturer for a design flaw in a component—ostensibly not for the design flaw in the component, but for the failure of the manufacturer's manual to warn of, or adequately correct the flaw. The manual is not a separate product giving rise to a separate cause of action; it is evidence used to support failure to warn and instruct theories involving the manufacturer's allegedly defective fuel servo. Allowing the plaintiffs to use artful pleadings to bypass GARA's protections and sue Precision for actions it took in its capacity as a manufacturer outside of the repose period would undermine the legislative intent behind the statute of repose. We affirm the trial court's grant of summary judgment barring plaintiffs' claims pursuant to GARA's statute of repose.[12]

---

[11] This remoteness is further illustrated by Precision's observation that the last contact that Precision Airmotive/Bendix had with the product at issue was in 1973; the fuel servo would later be sold in a different configuration, installed in a different engine (that had been originally installed on a different plane than the accident aircraft), and then overhauled using a different regulator nut which, in turn, allegedly contributed to/caused the accident.

[12] We therefore need not address Precision's additional arguments that the plaintiffs failed to establish that D&G relied on the component maintenance manual in conducting the

*The Plaintiffs Failed to Establish a Genuine Issue of Material Fact as to the Application of the Fraud Exception to GARA's Statute of Repose.*

██

¶ 30. The plaintiffs argue that even if GARA's repose provision applies to their claims against Precision, the trial court erred in its determination that they did not provide sufficient evidence to create a material question of fact under GARA's fraud exception. We reject the plaintiffs' argument.

¶ 31. Under GARA's fraud exception, the repose period does not apply if "the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer . . . knowingly misrepresented to the [FAA], or concealed or withheld from the [FAA], required information that is material and relevant to the performance or the maintenance or operation of" the aircraft or aircraft part and is causally related to the harm suffered. GARA § 2(b)1.

██

¶ 32. Consistent with the holdings in *Rickert v. Mitsubishi Heavy Indus., Ltd.*, 923 F. Supp. 1453 (D. Wyo. 1996),[13] and the recently released *Burton*, we read the statute as requiring that the defendant has know-

---

overhaul, that the plaintiffs' state law claims are preempted, and that, as a dissolved corporation, it could not properly be sued. *See Walgreen Co. v. City of Madison*, 2008 WI 80, ¶ 2, 311 Wis. 2d 158, 752 N.W.2d 687 (when resolution of one issue is dispositive, we need not reach other issues raised by the parties).

[13] We note that *Rickert v. Mitsubishi Heavy Indus., Ltd.*, 923 F. Supp. 1453 (D. Wyo. Apr. 12, 1996), was subsequently reversed on rehearing on other grounds in *Rickert v. Mitsubish i Heavy Indus., Ltd.*, 929 F. Supp. 380 (D. Wyo. Jun 19, 1996). In reversing on other grounds, the court reiterated that the plaintiff must produce some evidence showing that the defendant know-

ingly misrepresented, knowingly concealed or knowingly withheld required information. *Rickert*, 923 F. Supp. at 1456 (holding that knowledge is a separate element which must be pled and proved with regard to misrepresentation, concealment or withholding); *Burton*, 254 P.3d at 786 ("the terms 'conceal' and 'withhold' themselves suggest that the material, relevant information must knowingly be kept from the FAA"). Therefore, the plaintiff must present evidence of a mental state beyond negligence or oversight for the fraud exception to apply. If the plaintiff does not point to specific information showing the prerequisite knowledge, the fraud exception does not apply.

¶ 33. In a summary judgment motion, "the burden on the moving party may be discharged by 'showing' —that is, pointing out to the district [or trial] court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). As the trial court found, Precision has met its burden in this case.

¶ 34. To survive summary judgment on the application of the fraud exception, the plaintiffs must plead and prove with specificity: (1) knowing misrepresentation, or concealment, or withholding; (2) of required information that is material and relevant; (3) that is causally related to the harm suffered. *Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp. 2d 631, 646–47 (E.D. Pa. 2004).

¶ 35. The plaintiffs rely on the affidavit of their expert witness Colin Sommer. In his affidavit, Sommer provides that, in his opinion, "The documents reviewed indicate that Precision withheld and/or concealed [re-

ingly misrepresented something to, or concealed something from, the FAA concerning the performance and handling of its product. *Rickert*, 929 F. Supp. at 381.

quired] information from the [FAA]." However, Sommer points to no specific facts or evidence that Precision knowingly withheld or knowingly concealed any information required by the statute. Without any specific evidence that Precision had the requisite knowledge that they were concealing or withholding information, Sommer's conclusory statement is simply an opinion and does not satisfy GARA's requirement that the claimant plead and prove with specificity facts that show the fraud exception applies. Because the plaintiffs have provided no specific evidence that Precision knowingly withheld any information it was required to report to the FAA, there is no genuine issue of material fact in this case.

## CONCLUSION

¶ 36. We conclude that the component maintenance manual was produced by Precision in its capacity as a manufacturer of the servo. The maintenance manual, while not a part of the aircraft *per se*, is not a separate product enabling plaintiffs to circumvent GARA's eighteen-year statute of repose. GARA precludes a suit against a manufacturer for defects present in a component at the time of manufacture, including causes of action based on instructions in a related maintenance manual that allegedly failed to warn of, or correct, the component's defect. The plaintiffs failed to plead and prove that Precision knowingly concealed or withheld any information from the FAA. As such, there is no genuine issue of material fact as to the application of GARA's fraud exception. The trial court properly granted summary judgment in favor of Precision.

*By the Court.*—Judgment affirmed.